UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BOUGOURA DESIRE SANGO,

                    Plaintiff,

            v.

CITY OF NEW YORK, SGT MICHAEL
MARZOOCHI, P.O. ABDULRAH ALZOKARI
and JOHN/JANE DOE OFFICERS OF THE
26TH PRECINCT,

                    Defendants.

No. 24-cv-142 (RA)

<u>MEMORANDUM
OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Bougoura Desire Sango, proceeding pro se, brings this action under 42 U.S.C.

§ 1983 alleging claims for false arrest, excessive force, failure to intervene and malicious

prosecution against the City of New York and two of its police officers, Sergeant Michael

Marzocchi[1] and Officer Abdulrah Alzokari.  Sango also brings state-law claims for assault and

battery, negligent infliction of emotional distress ("NIED"), intentional infliction of emotional

distress ("IIED"), negligence and negligent hiring and training.  Defendants filed a motion to

dismiss under Rule 12(b)(6), Dkt. No. 40, which was accompanied by bodycam footage and a

Local Civil Rule 12.1 notice warning Sango that the Court may convert the motion into one for

summary judgment, Dkt. No. 45.  Sango submitted an opposition also relying on bodycam footage

and further citing to affidavits and medical records in support of his claims.  Dkt. Nos. 42, 46.

After the Court referred the motion to Magistrate Judge Tarnofsky, she issued a Report and

---

[1] Although the complaint identifies this Defendant as "Michael Marzoochi," Dkt. No. 1 ¶ 9, it appears that his last name is spelled "Marzocchi," *see* Dkt. No. 40 at 1.

Recommendation ("Report") recommending that the Court partially convert the motion into one for summary judgment, which she recommended be granted in part and denied in part. Dkt. No. 56. For the reasons that follow, the Court adopts in full Judge Tarnofsky's Report and (1) converts Defendants' motion to dismiss into a motion for partial summary judgment as to the claims for false arrest, excessive force, failure to intervene and assault and battery; (2) denies Defendants' motion for partial summary judgment on Sango's false arrest claim, his related claim for failure to intervene and his claim for assault and battery; (3) grants Defendants' motion for partial summary judgment on Sango's excessive force claim and his related claim for failure to intervene; (4) grants Defendants' motion to dismiss the NIED, IIED and negligence claims for failure to state a claim; (5) denies Defendants' motion to dismiss the claims for malicious prosecution and negligent hiring and training; and (6) denies Sango's application for leave to amend.

## BACKGROUND

The Court assumes the parties' familiarity with the facts as outlined in detail in the Report, *see* Report at 3–14, which it adopts in full for purposes of this opinion.

## LEGAL STANDARD

### I.    Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). On a dispositive motion, a court may "adopt those portions of the recommendation to which no 'specific, written objection' is made, as long as those sections are not clearly erroneous," *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)), but must review de novo those portions of a report to which a party has made specific objections, *see* 28 U.S.C. § 636(b)(1); *Greene*, 956 F. Supp. at 513.

## II.    Applicable Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts must therefore accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  Courts "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest."  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

In general, district courts may not consider evidence outside the pleadings when deciding a Rule 12(b)(6) motion.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir. 2016).  However, if a party submits such materials as part of its Rule 12(b)(6) motion, a court may convert all or part of the motion into one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  If the court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*

Once the motion is converted, the usual standard for summary judgment under Rule 56 applies.  Such a motion must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit'" and genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding whether a material dispute exists, courts must "resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is

sought." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (internal quotation marks omitted). "Assessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

## DISCUSSION

In the Report, Judge Tarnofsky recommended converting Defendants' motion to dismiss into one for summary judgment as to Sango's claims for false arrest, excessive force, failure to intervene and assault and battery. She then recommended granting summary judgment against Sango on his claims for excessive force and failure to intervene to prevent such force, but denying summary judgment on his claims for false arrest, failure to intervene to prevent a false arrest and assault and battery. As for the remaining claims, Judge Tarnofsky recommended denying Defendants' motion to dismiss Sango's claims for malicious prosecution and negligent hiring and training but granting the motion as to his claims for NIED, IIED and negligence. She further recommended denying leave to amend.

The parties filed objections to the portions of the Report addressing the summary judgment motion, but did not challenge Judge Tarnofsky's ruling on the NIED, IIED and negligence claims, or to her denial of leave to amend. Neither party objects to Judge Tarnofsky's recommendation to partially convert the motion to dismiss into one for summary judgment. Because the Court sees no clear error with that recommendation, it partially converts the pending motion into one for summary judgment, and proceeds to address the merits of that partial motion, as well as the motion to dismiss the remaining claims that were not converted.

## I.    False Arrest

After reviewing the bodycam footage and declarations,[2] Judge Tarnofsky recommended converting the motion to dismiss Sango's Section 1983 claim for false arrest into a summary judgment motion, and subsequently denying that motion on account of factual disputes over probable cause and qualified immunity.  *See* Report at 31, 36.  Defendants object to that recommendation, maintaining that there is no genuine dispute that they had probable cause, or at least arguable probable cause, to arrest Sango.  *See* Dkt. No. 57 ("Defs. Obj.") at 6, 12.  That objection is overruled.

"Probable cause to arrest is a complete defense to an action for false arrest."  *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021).  An officer has probable cause to make an arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "When information is received from a putative victim or eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity" or "credibility."  *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal citations omitted).  "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence," *Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001) (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)), and "when there are significant evidentiary gaps or uncertainties, the police may not ignore them and simply

---

[2] Defendants provided bodycam videos for Marzocchi, Alzokari and non-party officer Nicholas McDonough as exhibits to a declaration accompanying their motion to dismiss.  *See* Dkt. No. 40-2 Ex. A ("Marzocchi 1907-2 Bodycam"); *id.* Ex. B ("Alzokari 1904-2 Bodycam"); *id.* Ex. C ("McDonough 1905-3 Bodycam").  Judge Tarnofsky then ordered Defendants to provide bodycam footage for four additional officers that Sango referenced in his opposition brief, which they submitted to the Court by DVD.  *See* Dkt. Nos. 53, 55.  These four bodycam videos are referenced herein as "Officer 1905 Bodycam," "Officer 1905-2 Bodycam," "Officer 1907 Bodycam" and "Officer 1931-2 Bodycam."

make an arrest based on obviously spotty and uncorroborated evidence," *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 386 (S.D.N.Y. 2009) (citing *Oliveira v. Mayer*, 23 F.3d 642, 647–48 (2d Cir. 1994)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (internal citations omitted).

As Judge Tarnofsky's Report details in depth, there are multiple disputes over key facts that preclude a finding of probable cause as a matter of law. Most significantly, there are serious issues with the "credibility" of the victim's identification of Sango. *Curley*, 268 F.3d at 70. When officers first arrived to question the victim, he was lying prone, disoriented from a head injury and unable to state what month it was or who was currently president. Officer 1905-2 Bodycam at 3:30–5:00. Once he got to his feet, he appeared to need help from officers to keep steady, Marzocchi 1907-2 Bodycam at 6:14–6:35, and Sango asserts he may also have been "drunk," Dkt. No. 42 ("Sango Opp'n") at 13. As Judge Tarnofsky noted, a rational jury could conclude that the victim was not a reliable witness, which tainted his later identification of Sango. *See* Report at 31.

The initial statements by the victim and other witnesses cast further doubt on his ability to accurately identify his attackers. When officers first pressed the victim to describe them, he stated that one assailant was a Black man in an "African shirt" that was "brown . . . bottom and top," and that another was wearing a "black and white stripe[d]" top." Officer 1905-2 Bodycam at 3:30–4:50. As it turns out, Sango was dressed in matching bright-red pants and shirt—a hard-to-miss outfit nothing like the victim's original description. And while the victim said that others had participated in the attack, none of the other witnesses gave a description that matched Sango either. One witness corroborated the victim's account that a man in a striped shirt had attacked him,

McDonough 1905-3 Bodycam at 3:58–4:15, while several others told police that the attackers had fled after 911 was called, Officer 1905-2 Bodycam at 5:40–5:50; Alzokari 1904-2 Bodycam at 8:58–9:06.  In fact, at one point multiple witnesses—who appeared lucent and aware, in sharp contrast to the victim—insisted that the attackers were "outside," pointing to the other side of the church.  Marzocchi 1907-2 Bodycam at 3:26–3:35.  At that very moment, Sango was standing in the doorway right in front of them, just feet away, yet none of the witnesses so much as hinted that he was responsible.  *See id.* at 3:27–3:34.  According to Sango, multiple witnesses also told officers that he "was not involved at all in any fight" and that he "was inside the Church when the incident started and was not anywhere" near it.  Sango Opp'n at 3.

To be sure, the victim eventually identified Sango as one of his assailants, which is often sufficient to establish probable cause.  *See Curley*, 268 F.3d at 70.  But there is an exception to that rule when "the circumstances raise doubts as to the person's veracity" or "credibility," which describes this case to a tee.  *Id.*  As just discussed, the victim himself appeared disoriented and potentially intoxicated, and neither his initial statements nor witness accounts corroborated his identification of Sango.  And even the identification itself came under questionable conditions.  Seconds before the victim pointed at Sango, Marzocchi asked him whether he could identify the attackers "right now."  Marzocchi 1907-2 Bodycam at 6:50–8:01.  Although a rational jury could accept the victim's pointing as an affirmative identification, it could also conclude that the victim was merely acting on the officer's suggestion that he identify someone immediately.  And while the victim later confirmed that Sango had been one of the attackers, this only came after the officer asked him whether it was "the guy wearing red."  Marzocchi 1907-2 Bodycam at 16:41–16:51.  At that point, the victim was sitting in the ambulance and gesturing indiscriminately behind him that it was "all of them," which appeared to confuse even the officer speaking with him.  Marzocchi

1907-2 Bodycam at 15:29–15:32; *id.* at 15:32–15:34 (Marzocchi responding "All of who?").
Given the circumstances, a reasonable jury could question the strength of this confirmation as well,
given that it came at the officer's suggestion rather than an affirmative and unprompted
identification of Sango. Given these questions surrounding the victim's credibility, contradictory
witness statements and apparent lack of any corroboration, the Court agrees with Judge Tarnofsky
that Defendants are not entitled to summary judgment in their favor, as probable cause remains
heavily in dispute.

While a closer question, the Court also agrees with the Report that these fact disputes
preclude a finding of qualified immunity at this stage. "Even if an arrest is made without probable
cause, a police officer is entitled to qualified immunity if she can establish that she had 'arguable
probable cause' to arrest the plaintiff." *Prevost v. City of New York*, No. 13-cv-3760 (VEC), 2014
WL 6907560, at *3 (S.D.N.Y. Dec. 9, 2014). "Arguable probable cause exists when a reasonable
officer in the same circumstances and possessing the same knowledge in question could have
reasonably believed that probable cause existed in light of well-established law." *Banno v. City of
New York*, No. 06-cv-2270 (RJS), 2015 WL 845709, at *4 (S.D.N.Y. Feb. 25, 2015) (emphasis
and internal quotation marks omitted). "[S]ummary judgment dismissing a plaintiff's false arrest
claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause
determination was objectively reasonable." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir.
2007). But "if the officer's reasonableness depends on material issues of fact, then summary
judgment is inappropriate." *Id.*

Judge Tarnofsky found that reasonableness turned on disputed issues of fact here, and the
Court agrees. As already discussed, Sango has "adduced evidence that a reasonable jury could
find undermines the existence of probable cause or 'arguable probable cause,' including evidence

8

that a jury could use to call into question the proximity of [Sango] to the fight, the veracity of [the victim's] version of events, and the legitimacy of [his] identification of [Sango]." *Banno*, 2015 WL 845709, at *4 (denying summary judgment on basis of qualified immunity for similar reasons). While Defendants are free to raise and pursue this defense at trial, the Court cannot say that they are entitled to it as a matter of law.

To be clear, the Court does not suggest that the officers acted in bad faith. While much of the key evidence is disputed, the bodycam footage depicts them appearing to make a sincere effort to secure and make sense of chaotic scene filled with emotional and potentially unreliable witnesses. But that fact alone is insufficient to take this issue away from the jury, given that a reasonable one could side with Sango's version of the facts in which arguable probable cause was lacking. *See Yeng Feng Zhao*, 656 F. Supp. 2d at 386 ("[W]hen there are significant evidentiary gaps or uncertainties, the police may not ignore them and simply make an arrest based on obviously spotty and uncorroborated evidence."). The Court thus denies Defendants' motion for summary judgment against Sango's false arrest claim on the merits as well as with respect to qualified immunity.

## II.    Excessive Force

The Court also agrees with the Report that summary judgment should be granted on Sango's Section 1983 claim for excessive force. To succeed on an excessive force claim, a plaintiff must show "that the alleged use of force [was] objectively sufficiently serious or harmful enough to be actionable" and that it "was more than de minim[i]s." *Rincon v. City of New York*, No. 03-cv-8276 (LAP), 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005).

Sango claims that officers "pushed" him into the backseat of the police car, which caused him to "strike his knee on the back of the front seat." Dkt. No. 1 ¶¶ 35–36; *see also* Dkt. No. 58

("Sango Obj.") at 4.   He further asserts that officers "rush[ed]" him "into the vehicle, slamming/forcing his leg, and then compressing/squeezing him into a too-tight space, ignoring his pleas that his knee was stuck."  Sango Obj. at 5.

The bodycam footage shows otherwise.  Contrary to Sango's claims, the video shows a clear view of McDonough escorting him to the cruiser and guiding him into the open door and onto the seat, with two hands on Sango's arm.  McDonough 1905-3 Bodycam at 22:20–22:32. Sango then sits on the seat, and McDonough uses one hand to ensure that Sango's right leg is in the cruiser.  Nothing about this encounter was excessive, and no reasonable jury could find otherwise.  And when McDonough returns to the vehicle a minute later to ask Sango where his son is, it is apparent that Sango has room to move his legs, further refuting his claim of excessive "squeezing."  *Id.* at 23:50–23:55.   Because no reasonable jury could agree with Sango's characterization of the events, Defendants' motion for summary judgment on Sango's claim of excessive force is granted.

## III.    Failure to Intervene

The Report further recommended that summary judgment be denied as to Sango's claim for failure to intervene predicated on false arrest, and that it be granted as to Sango's claim for failure to intervene predicated on excessive force.  *See* Report at 41.  As Judge Tarnofsky explained, failure-to-intervene claims are tied to an "underlying constitutional violation," which generally means that they should rise and fall along with the corresponding constitutional claim. *Id.* at 40 (internal quotation marks omitted).

Defendants do not object to the Report's recommendation that summary judgment be denied on Sango's claim for failure to intervene to prevent false arrest.  Because the Court finds

that the underlying false arrest claim survives, it adopts Judge Tarnofsky's recommendation to deny summary judgment on the related failure-to-intervene claim.

As for Sango, he objects to Judge Tarnofsky's recommendation that summary judgment be granted against his claim for failure to intervene to prevent excessive force. *See* Sango Obj. at 7. The Court already determined, however, that his claim for excessive force fails. Because "[a] failure to intervene claim cannot proceed when there is no underlying constitutional violation," the Court grants summary judgment on Sango's failure-to-intervene claim predicated on excessive force. *Seward v. Antonini*, No. 20-cv-9251 (KMK), 2023 WL 6387180, at \*19 (S.D.N.Y. Sept. 29, 2023).

## IV.    Assault and Battery

The Court also overrules Defendants' objections to Judge Tarnofsky's recommendation that summary judgment be denied on Sango's claims for assault and battery under state law. Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact" and a battery is "intentional wrongful physical contact with another person without consent." *Lederman v. Adams*, 45 F. Supp. 2d 259, 268 (S.D.N.Y. 1999) (internal quotation marks omitted). "If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001). In other words, an officer will be "liable for assault and battery" if he used any degree of force whatsoever to carry out an unlawful arrest, even if all he did was "handcuff[]" the plaintiff and "place[] her into his police vehicle." *Id.* (collecting cases); *see also Johnson v. Suffold Cnty. Police Dep't*, 665 N.Y.S.2d 440, 440–41 (2d Dep't 1997) ("As the arrest of the

plaintiff by the defendant police officer Stephen E. Brussell was unlawful, Brussell committed a battery when he touched the plaintiff during that arrest.").

Here, there is no dispute that Defendants handcuffed Sango and placed him into the back of the police car, which would constitute assault and battery if the arrest was unlawful. But as already determined, the lawfulness of the arrest turns on the existence of probable cause, which remains in dispute. *See Mesa v. City of New York*, No. 09-cv-10464 (JPO), 2013 WL 31002, at *32 (S.D.N.Y. Jan. 3, 2013) ("[W]hen there is no probable cause for an arrest, all force employed during that arrest is unlawful."). The Court thus denies summary judgment on this claim.

## V.    **Malicious Prosecution**

Defendants further object to Judge Tarnofsky's recommendation that Sango's claim for malicious prosecution may proceed past the pleading stage. *See* Defs. Obj. at 14. Although Sango's counseled complaint did not assert this claim as a cause of action, "the Court may consider new claims appearing for the first time in [pro se] briefing if the claims could have been asserted based on the facts alleged in the complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (internal quotation marks omitted). Here, the first sentence of Sango's opposition stated that he was bringing a claim for "Malicious prosecution," and he later asserted that he had been "maliciously prosecuted" by being arraigned and forced to appear in criminal court two times. Sango Opp'n at 1, 4–5. Because these assertions "simply articulat[e] [an] additional claim[] that [Sango's] original complaint could have been construed to allege," the Court will exercise its discretion and consider the new claim here. *Lang v. N.Y.C. Health & Hosps. Corp.*, No. 12-cv-5523 (WHP), 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013). Nor will the Court sua sponte dismiss this claim, given that Defendants failed to oppose it in their motion to dismiss and only do so for the first time in their objections. *See Razzoli v. Fed. Bureau of Prisons*, No. 12-cv-3774

(LAP), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.").  Accordingly, to the extent Defendants move to dismiss this claim, that motion is denied.

## VI.    NIED, IIED and Negligence

Neither party objects to the Report's conclusion that Sango's state-law claims for NIED, IIED and negligence should be dismissed for failure to state a claim.  *See* Report at 45–59.  Having reviewed this portion of the Report for clear error, the Court agrees with and adopts Judge Tarnofsky's recommendation that these claims be dismissed.

## VII.    Negligent Hiring and Training

The Report further recommended that Sango's negligent hiring and training claim be permitted to proceed.  *See* Report at 49.  The Court agrees.  Sango's complaint asserted this claim against the City of New York, Dkt. No. 1 ¶¶ 85–88, and his opposition made explicit that this was a claim for "negligent hiring and training," Sango Opp'n at 1.  Defendants did not challenge this separate negligence claim in their motion to dismiss, and only do so now for the first time in their objections to the Report.  *See* Dkt. No. 40 at 15–16.  For the reasons stated by Judge Tarnofsky, the Court declines to dismiss this claim sua sponte.  *See Razzoli*, 2014 WL 2440771, at *5 (refusing to consider new arguments made for first time in objections).

## VIII.   Leave to Amend

Finally, neither party objects to the Report's recommendation that Sango's request for leave to amend be denied as futile.  *See* Report at 49–51.  Reviewing this portion of the Report for clear error, the Court agrees and denies Sango's application for leave to amend.

**CONCLUSION**

For these reasons, the Court overrules the objections to the Report and (1) converts Defendants' motion to dismiss into a motion for partial summary judgment as to the claims for false arrest, excessive force, failure to intervene, and assault and battery; (2) denies Defendants' motion for partial summary judgment on Sango's false arrest claim, his related claim for failure to intervene and his claim for assault and battery; (3) grants Defendants' motion for partial summary judgment on Sango's excessive force claim and his related claim for failure to intervene; (4) grants Defendants' motion to dismiss the NIED, IIED and negligence claims for failure to state a claim; (5) denies Defendants' motion to dismiss the claims for malicious prosecution and negligent hiring and training; and (6) denies Sango's application for leave to amend.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 40 and 57.

SO ORDERED.

Dated:    September 19, 2025
          New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge